## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| United States, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:16-cr-18 |
| Roger Hedilberto Meraz-Fugon, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

### <u>Memorandum Opinion</u>

This matter comes before the Court on Defendant Roger Hedilberto Meraz-Fugon's

Motion for a New Trial. Dkt. No. 71. For the reasons outlined below, the Court finds good

cause to deny the Motion.

### I.        Background

On January 28, 2016, the grand jury indicted Meraz-Fugon on one count of importation

of a controlled substance in violation of 21 U.S.C. §§ 952(a) and 960(b)(3). Dkt. No. 10.

Meraz-Fugon decided to proceed to trial and on April 26, 2016, that trial began. At trial, the

prosecution presented evidence that on December 30, 2015, Meraz-Fugon arrived at Dulles

International Airport on a flight from Honduras with approximately one kilogram of cocaine in

his luggage, concealed within the walls of jars containing a white cream sauce. After deplaning,

Meraz-Fugon was questioned at primary inspection. A United States Customs and Border

Protection ("CBP") officer sent Meraz-Fugon to secondary inspection because he was suspicious

of Meraz-Fugon's behavior and his answers during questioning. At secondary inspection,

Meraz-Fugon's luggage was searched and the cocaine was discovered. The Defendant denied

knowing about the cocaine.

1

At trial, defense counsel presented the testimony of an operator of a courier company who explained how and why Meraz-Fugon was asked, as a favor, to carry the bag containing the cocaine.  Defense counsel also presented the testimony of Dr. Katherine Snably, a psychologist, who attested that she had determined that Meraz-Fugon was intellectually disabled after administering a series of standard psychological tests on him.  Based on this evidence, defense counsel argued to the jury that because of his disability and the circumstances around the crime Meraz-Fugon did not form the *mens rea* required to convict him.  Defense counsel requested that the Court give a "theory of the case" instruction to the jury outlining this argument.  The Court declined this request.

During deliberations, the jury asked several questions regarding the Defendant's competence and mental capacity.  Each time a question was asked, the Court conferenced with the parties and drafted a response to be given to the jury.  Each time the Court gave the parties an opportunity to object to the Court's response.  The jury also sent two notes to the Court stating that they were deadlocked.  In response to the second note indicating that the jury was deadlocked, the Court consulted with the parties and gave the jury an *Allen* charge.  Defense counsel objected to the content of the charge.  Forty minutes after the Court gave the *Allen* charge, the jury convicted Meraz-Fugon.  Dkt. No. 61.

The Court gave defense counsel leave to file post-trial motions after the trial transcripts had been docketed.  The trial transcripts were docketed on May 20, 2016, and on June 9, 2016, defense counsel filed the pending Motion for a New Trial.  The Government filed an opposition to this Motion and defense counsel filed a reply.  A short hearing on this Motion was held on August 9, 2016.

2

## II.    Legal Standard: Motion for a New Trial

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  The district court has discretion to grant a new trial, however, the Fourth Circuit has directed that this discretion should be used sparingly. *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985).  This discretion should be used only "where it is demonstrated that the fundamental fairness or integrity of the trial result is substantially in doubt." *United States v. Jennings,* 438 F.Supp.2d 637, 642 (E.D. Va. 2006).

In addition, "[p]ursuant to the cumulative error doctrine, '[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.'" *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009) (quoting *United States v. Rivera,* 900 F.2d 1462, 1469 (10th Cir. 1990)).  However, to satisfy this requirement, the cumulative effect "of such errors must 'so fatally infect the trial that they violated the trial's fundamental fairness.'" *Id.* (quoting *United States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).

The Defendant has requested a new trial on three different grounds: (1) the Court should have given the jury the Defendant's requested "theory of the case" instruction; (2) the content of the *Allen* charge was not fairly balanced; and (3) the Court's responses to the jury's questions were confusing and introduced new legal theories.  The Court will address each argument in turn.

### III.   Analysis

*A. The Theory of the Case Instruction*

The Defendant first argues that the Court's failure to give his requested theory of the case instruction to the jury was an error that requires a new trial.  The Fourth Circuit has opined that "[a]s long as the instructions have an evidentiary foundation and are accurate statements of the law, the district court should include instructions 'to instruct the jury in the defendant's theory of defense.'" *United States v. Dornhofer*, 859 F.2d 1195, 1199 (4th Cir. 1988) (quoting *United States v. Mitchell*, 495 F.2d 285, 287–288 (4th Cir. 1974)).  A district court's decision not to give a jury instruction the criminal defendant requested may be grounds for granting a new trial if the following three factors are satisfied: (1) the instruction was legally correct, (2) the instruction "was not substantially covered by the charge that the district court actually gave to the jury," and (3) the instruction "involved some point so important that the failure to give the instruction seriously impaired the defendant's defense." *United States v. Lewis*, 53 F.3d 29, 32 (4th Cir. 1995).  However, even if these three factors are satisfied, the court's decision not to give the defendant's requested instruction is not an abuse of discretion "unless the defendant can show that the record as a whole demonstrates prejudice." *United States v. Bartko*, 728 F.3d 327, 343 (4th Cir. 2013).  The Fourth Circuit does "not view a single instruction in isolation; rather [the Fourth Circuit] consider[s] whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." *United States v. Rahman*, 83 F.3d 89, 92 (4th Cir. 1996).

The Defendant's requested theory of the case instruction read as follows:

> As I have instructed you, the government must prove, beyond a reasonable doubt, that the defendant knew that the materials he possessed contained illegal narcotics. If the defendant lacked this knowledge you must find him not guilty, even if the government proves that the only reason the defendant lacked such

4

knowledge was because he was careless, negligent or even foolish in failing to obtain it.

In determining whether the defendant acted knowingly—that is, whether the government has proven beyond a reasonable doubt that he knew that the materials he possessed contained illegal narcotics—you may consider the defendant's limited intellectual function. While you may consider inferences that the defendant might have drawn from the facts known to him, you may also consider whether the defendant would make inferences in the same way as, or to the same degree as, a non-intellectual-disable person. If you find that it's reasonably possible that the defendant did not know that the materials he possessed contained illegal narcotics, he must be acquitted.

It is entirely up to you to determine what inferences the defendant is likely to have drawn from the facts known to him.

Because this instruction was substantially covered by the Court's other instructions the Defendant was not entitled to have this instruction read to the jury.

The first paragraph of the Defendant's theory of the case instruction merely restates the government's burden on the *mens rea* elements—which was already set forth in other instructions given to the jury. The second paragraph references specific evidence that the jury should consider when determining whether the Defendant had the requisite *mens rea* for conviction. This paragraph is also covered by the other instructions telling the jury to consider all of the evidence before it when determining whether the government has met its burden. Thus, from a purely analytical approach, the Court's decision not to give the instruction is not grounds for a new trial because it was encompassed in the Court's other directions.

In addition, this case stands apart from the cases the Defendant cites in support of his position. The defense's "theory of the case" was that the government could not prove all of the elements of the crime because of the Defendant's low intellectual functioning, as established through the testimony of a psychologist. The Court instructed the jury on all of the elements of the crime and the government's burden—these instructions covered the entirety of the defense's theory of the case. Unlike the cases cited by the Defendant, the Defendant did not present an

5

affirmative defense or a defense based on a legal rule that the jury would not have known without specific instruction. Thus, the cases the defense cites are generally not applicable here. *See United States v. Ricks*, 573 F.3d 198, 201 (4th Cir. 2009) (district court should have given affirmative justification defense); *United States v. Lewis*, 53 F.3d 29, 34 (4th Cir. 1995) (district court gave general instruction in conspiracy but failed to instruct the jury clearly that it may not convict Lewis for conspiring with a government agent; this was error because jury had no way to know this legal rule without specific instruction); *United States v. Hicks*, 748 F.2d 854, 857 (4th Cir. 1984) (district court erred in refusing to give an alibi instruction); *United States v. Head*, 641 F.2d 174, 180 (4th Cir. 1981) (district court erred in failing to give reliance on accountant instruction). The defense also has not made a clear argument that the failure to give the theory of the case instruction resulted in prejudice—that is, that the outcome of the case would have been different when all of the instructions given to the jury are taken into consideration.

Because the Defendant's theory of the case instruction was covered by the Court's other instructions and the defendant suffered no clear prejudice, the Court concludes that the decision not to give the requested instruction is not sufficient grounds for granting a new trial.

## B. The Allen *Charge*

The Defendant next argues that the content of the *Allen* charge given to the jury at trial is reversible per se. An *Allen* charge, named after *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), "is given by a trial court when a jury has reached an impasse in its deliberations and is unable to reach a consensus." *United States v. Cropp*, 127 F.3d 354, 359 (4th Cir. 1997). The decision to give an *Allen* charge and the content of the charge is within the sound discretion of the district court. *Id.*

6

In *United States v. Burgos*, 55 F.3d 933, 936 (4th Cir. 1995), the Fourth Circuit summarized the Fourth Circuit's *Allen* charge case law.  The Fourth Circuit noted that "[t]raditionally, the standard *Allen* charge informed the jury (1) that a new trial would be expensive for both sides; (2) that there is no reason to believe that another jury would do a better job; (3) that it is important that a unanimous verdict be reached; and (4) that jurors in the minority should consider whether the majority's position is correct." *Id.*  The *Burgos* court went on to explain that the Fourth Circuit had "move[d] toward a more balanced *Allen* charge." *Id.* at 937.  Under this more balanced approach, the Fourth Circuit "strongly recommend[s] that 'the majority and minority on a deadlocked jury be instructed to give equal consideration to each other's views.'" *Id.* (quoting *United States v. West*, 877 F.2d 281, 291 (4th Cir. 1989)).  While this balanced approach is strongly recommended, *Burgos* does not require a trial court to include specific language in an *Allen* charge, as the defendant argues.  Further, "[t]he most egregious mistake that can be made in the context of an *Allen* charge is for a district court to suggest, in any way, that jurors surrender their conscientious convictions." *Id.* at 939.

The *Burgos* court ultimately reversed Burgos' conviction and remanded the case to the district court for a new trial because the district court's *Allen* "charge was not sufficiently balanced to ensure that the minority on the jury would not be coerced into going along with the majority." *Id.* (quotations and citations omitted).  Specifically, the Fourth Circuit took issue with the following language in the district court's *Allen* charge:

> You know, *it is not easy to back away from an opinion that has earlier been expressed. If I have taken a possession [sic] [position] amongst a group of people, sometimes my pride doesn't allow me to revisit and to later say in light of what somebody else has said that maybe yours is the better point of view.*
> *Now, I'm not asking anybody-let me make this clear, I'm not asking anybody to give up a firmly held belief. You don't have to do that. But I do ask you to think about it.*

7

*Id.* at 938. The *Burgos* Court concluded that "[t]he clear implication of the court's remark is that jurors should think about giving up their firmly held beliefs." *Id.* at 940. The Court explained that "[r]egardless of the district court's intentions," when read in total, "it is reasonable to conclude that such remarks would weigh more heavily on those jurors taking a stance contrary to that of the majority of their peers." *Id.* at 940.

In this case, the Court gave an *Allen* charge almost identical to the *Allen* charge found in O'Malley, Grenig, and Lee, Federal Jury Practice and Instructions, § 20.08 (6th Ed. 2008). The charge contained, in part, the following language:

> In the course of your deliberations, you should not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. In order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor and frankness and with proper deference to and regard to the opinions of each other. That is to say, in conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to re-examine your own views.
>
> If the greater majority of you are for conviction, each dissenting juror ought to consider whether a doubt in his or her own mind is a reasonable one since it makes no effective impression upon the minds of so many equally honest and equally conscientious fellow jurors who bear the same responsibility, serve under the same oath, and have heard the same evidence with, we may assume, the same attention and an equal desire to arrive at the truth.
>
> If, on the other hand, a majority or even a lesser number of you are for acquittal, the other jurors ought to seriously ask themselves again, and most thoughtfully, whether they do not have reason to doubt the correctness of a judgment which is not concurred in by many of their fellow jurors and whether they should not distrust the weight and sufficiency of evidence which fails to convince the minds of several of their fellow jurors beyond a reasonable doubt.

The charge first neutrally encouraged each juror to pay due attention and respect to the views of the other jurors with a disposition to re-examine their own views. The instruction then encouraged each juror to reconsider their views, without regard to whether the juror was in the majority or minority or to whether the juror was in favor of conviction or acquittal.

8

Significantly, unlike in *Burgos*, the instruction did not encourage jurors in the minority to "giv[e] up their firmly held beliefs." 55 F.3d at 940. The charge reminded the jurors that none of them were "expected to yield a conscientious belief he or she may have as to the weight or effect of evidence." In addition, the charge emphasized that the jury, "[a]bove all," should "keep constantly in mind" that a defendant should not have to endure the burdens of a criminal trial unless each juror's "final conscientious appraisal of the evidence . . . clearly requires it."

Even if the instruction did not strike a perfect balance, the Court cannot grant a new trial unless the *Allen* charge had an unduly coercive effect. *See United States v. West*, 877 F.2d 281, 291 (4th Cir. 1989). One factor the Fourth Circuit has considered in determining whether an *Allen* charge was unduly coercive is whether the jury has spent a "substantial time deliberating after having received an *Allen* charge." 55 F.3d at 940 n. 7. In *United States v. West*, the Fourth Circuit declined to find coercion despite an imperfect *Allen* charge where the jury deliberated for two hours after receiving the charge, the jury was twice cautioned not to surrender their conscientious convictions, and they were told that "[y]ou may be as leisurely in your deliberations as the occasion may require and should take all the time which you may feel is necessary." 877 F.2d at 291. In contrast, in *Burgos*, the Fourth Circuit declined to find that "two additional hours of deliberation were enough to offset the coercive nature of the charge." 55 F.3d at 940 n. 7.

This case is closer to *West* than to *Burgos*. It is true that in this case the jury only deliberated for 40 additional minutes after receiving the *Allen* charge. However, in both *West* and this case, the jury was instructed specifically not to surrender their conscientious convictions and to take as much time as they needed to deliberate. Taking all of these factors into account, the Court concludes that the *Allen* charge it gave to the jury was neither imbalanced nor unduly

9

coercive. Accordingly, the content of the charge was not an abuse of discretion and is not grounds for a new trial on its own.

### C. Court's Response to Jury Questions

The Defendant next argues that the Court improperly responded to the jury's questions during the deliberation. Specifically, the Defendant argues that the Court's responses were confusing and that the Court should have given defense counsel an opportunity to provide additional argumentation to the jury in light of the Court's responses.

"It is well established that the necessity, extent and character of any supplemental instructions to the jury are matters within the sound discretion of the district court." *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990). Further, when the jury sends questions to the court, indicating that it is struggling with a particular issue, "the trial court has a duty" to "clear [these difficulties] away with concrete accuracy." *Id.* (quoting *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). If "a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time for additional argument." *Id.* at 547. However, even if the trial court should have given counsel additional time for argument under this standard, a new trial is not warranted unless the defendant can show such an error resulted in actual prejudice. *Id.*

With these principals in mind, the Court will recount the jury's questions and the Court's responses and then analyze the Defendant's arguments that the Court's responses were in error.

### 1. The Three Sets of Jury Questions and the Court's Responses

#### i. The First Note

Shortly after the jurors began deliberating on April 27, 2016, they sent the first note to the Court, which read as follows:

> Was the defendant found mentally competent to stand trial? Is there a rule/law/standard regarding competency? Was there a hearing on this matter?

On the joint suggestion of the parties, the Court provided the following response:

> I am unable to answer your questions, but I invite you to refer to instruction number 3 regarding the evidence that you should consider.

### ii. The Second Note

About an hour after the Court responded to the first question, just before it retired for the day, the jury sent a second note, which read as follows:

> Per jury instruction #20, second sentence states "No one can avoid responsibility for a crime by deliberately ignoring what is obvious."
>
> Does mental incapacity change this standard?
>
> What if someone is too mentally disabled that there can be no "responsibility" possible?

The next morning, after discussion with both parties, the Court provided the following response to the jury:

> The defendant's "mental competency" to stand trial is not an issue in this case.
>
> The defendant has not raised the defense of insanity, which is an affirmative defense that because of a severe mental defect or disease he was unable to appreciate the nature and quality or wrongfulness of his acts. You have instead heard testimony about the defendant's intellectual functioning, through a psychologist and other witnesses, which you may consider in determining whether the defendant acted knowingly or deliberately.
>
> The Court has previously instructed you, in Jury Instruction No. 19, that the government must prove beyond a reasonable doubt that the defendant acted knowingly. The Court has also instructed you, in Jury Instruction No. 20, that the government may prove that the defendant acted knowingly by proving, beyond a reasonable doubt, that the defendant deliberately closed his eyes to what would otherwise have been obvious to him.
>
> In deciding whether the defendant acted knowingly or with deliberate ignorance, you may consider all evidence that was presented in the trial, as explained in Jury Instruction No. 3.

Before receiving the Court's response, the jury sent a third note to the Court indicating that they were deadlocked.

### iii. The Fourth Note

Late on the morning of April 28, 2016, the jury sent a fourth note to the Court, which read as follows:

> Why were the I.Q. test results not admitted into evidence? They are not in the exhibits.
>
> Based on your written response to question #2, (first line) was the defendant then affirmatively judged competent to stand trial?
>
> Did the government have the chance to have another L.C.P. examine the defendant?

After discussions with the parties, the Court provided the following response:

> 1. The IQ test results were admitted into evidence in the form of the psychologist's testimony, which you may consider along with all the other evidence admitted in the case.
> 2. The test for determining competency in a federal court is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as a factual understanding of the proceedings against him. As stated in answer #2 to your earlier questions, the question of competency to stand trial is not an issue in this case and is not to be considered by you.
> 3. You must make your decision on guilt or innocence based on the evidence admitted before you and all of the instruction you have received.

A few hours later, the jury sent a fifth note to the Court again indicating that it was deadlocked.

In response, the Court gave the jury the *Allen* charge discussed in the previous section of this memorandum.

### 2. Analysis of the Court's Responses

The Defendant has no qualms with the Court's response to the jury's first question.

However, the Defendant argues that the Court's responses to the subsequent questions suffered from three flaws. First, the Defendant asserts that the Court's responses were confusing because

they purported to assist the jury in working through an issue that the Court simultaneously told the jury not to consider.

The Court does not agree. The jury's questions made clear that at least some of the jurors were struggling to understand the Defendant's *mens rea* argument. The jury repeatedly asked questions about issues that were not before it, including the Defendant's mental capacity to stand trial and whether different standards should be applied based on mental capacity. Because of the jury's obvious confusion, the Court found it necessary to explain in concrete terms and definitions, as opposed to generic labels, that these concepts were not at issue. The Court then redirected the jury to the proper *mens rea* standard and the burden carried by the government. These responses served the Court's duty to abate the jury's confusion "with concrete accuracy" and fell within the Court's discretion to craft and deliver supplemental instructions.

Second, the Defendant argues that the Court's responses were confusing in that they could have been misunderstood by the jury as an instruction not to consider defense counsel's *mens rea* argument. The Court again disagrees. As stated above, the Court clearly defined what was and what was not before the jury. The Court also specifically reemphasized the government's burden on the question of *mens rea* and repeated that the jury should consider all the evidence presented at trial, including the psychologist's testimony about the defendant's intellectual functioning, in deciding whether the government had met its burden. ("You have instead heard testimony about the defendant's intellectual functioning, through a psychologist and other witnesses, which you may consider in determining whether the defendant acted knowingly or deliberately."). A reasonable jury would not have misunderstood these clear instructions to mean they should ignore defense counsel's primary argument.

13

Third, the Defendant argues that the Court identified and defined new legal concepts but did not give defense counsel an opportunity to address these new concepts through additional argumentation. The Court's identification of legal concepts in its responses did not present "a new theory of the case" that necessitated additional argumentation. *See United States v. Alden*, 64 F.3d 659 (4th Cir. 1995). This lies in stark contrast to the supplemental instruction given in *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990), a case the defense relies on.

The defendant in *Horton* was indicted, along with two co-defendants, for murder. *Id.* at 542. Horton's two co-defendants pleaded guilty to voluntary manslaughter while Horton proceeded to trial. *Id.* After closing arguments, the Court gave the jury instructions, but left out an aiding and abetting charge. *Id.* During deliberations, the jury sent several inquiries to the court, all asking whether the defendant could be convicted of first-degree murder if he did not plan the murder or inflict the fatal injury.[1] *Id.* at 542-43. In light of these questions, the trial court determined that it was appropriate to give the jury an aiding and abetting instruction. *Id.* Aiding and abetting is an entirely new theory under which the defendant could have been found guilty, so additional argument was necessary. *Id.*; *see also, United States v. Gaskins*, 849 F.2d 454, 459-460 (9th Cir. 1988) ("[A]rguments based on convicting a defendant as a principal or convicting a defendant as an aider and abettor are based on two conceptually different theories"). In this case, rather than introduce a new theory under which the Defendant could be convicted, the Court simply drew the lines of what issues were and were not before the jury more clearly.

---

[1] The questions the jury sent to the court read as follows:

For any of the verdict [sic] do you have to inflict the body injury, or two, be the one to inflict the fatal injury to be convicted of first-degree murder?

If you were not the one to plan the murder, can you be convicted of first-degree murder?

If you are not the only one to premeditate the murder, can you be convicted of first-degree murder?

14

Accordingly, the Court need not have given defense counsel a chance to provide additional argument.

In addition, even if the Court should have allowed defense counsel to make additional arguments to the jury, a new trial is not required because the Defendant did not suffer any prejudice. The trial court in *Horton* only gave each side three additional minutes to make arguments to the jury on the aiding and abetting instruction. 921 F.2d at 543. On appeal, the Fourth Circuit found this short amount of time was "utterly inadequate." *Id.* at 547. However, the *Horton* court concluded that the defendant had suffered no prejudice, and, accordingly, a new trial was not necessary, because "all points essential to the defendant's case were made in the initial closing argument." *Id.* at 547 ("[T]he factual predicates of Horton as principal and of Horton as aider and abettor are so similar that the arguments to be made against guilt are essentially the same under both theories.").

Like in *Horton*, defense counsel in this case has failed to identify what new arguments would have been presented had the Court granted additional argumentation time. The Defendant asserts that if the Court had granted additional argumentation defense counsel would have "argue[d] how and why the jury could incorporate the testimony from Dr. Snably into its consideration of the issues that were properly before it in light of the Court's instructions about what was not properly before the jury." The Court does not find this persuasive as defense counsel had already argued in its closing how and why the jury could incorporate the testimony from Dr. Snably in determining whether the *mens rea* element was satisfied. This argumentation would not have changed after the Court identified for the jury specific issues that they were not to consider. The Court, therefore, cannot conclude that the Defendant suffered prejudice because defense counsel was not given additional time to make arguments to the jury after the

15

supplemental instructions were given. The Court's responses to the jury's questions are,

therefore, not sufficient grounds upon which to grant a new trial.

### IV.   Conclusion

As explained above, none of the grounds cited by the Defendant, individually, are

grounds that justify granting the Motion for a New Trial. The Court also does not find the

cumulative effect of the alleged errors violated the trial's fundamental fairness. The Court,

therefore, finds good cause to DENY the Motion for a New Trial. An appropriate order will

issue.

August __ 2016
Alexandria, VA

                         /s/

                     Liam O'Grady
                     United States District Judge